# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **MELANEE PACKARD,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**RIGHT NOW ROOFING FL INC.**, a Florida corporation, d/b/a Able Sterling Roofing,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Melanee Packard ("Plaintiff" or "Packard") brings this Class Action Complaint and Demand for Jury Trial against Defendant Right Now Roofing FL d/b/a Able Sterling Roofing ("Defendant" or "Able Sterling Roofing") to stop the Defendant from violating the Florida Telephone Solicitation Act ("FTSA") by directing the making of autodialed telemarketing calls *without consent* using an autodialer to Florida consumers who registered their phone numbers on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences,

and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Melanee Packard is a resident of North Port, Florida.

2. Defendant Able Sterling Roofing is a registered fictitious name for Right Now Roofing Fl, Inc. with its principal place of business in Port Charlotte, Florida. Defendant conducts business throughout this District.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the FTSA.

4. This Court has personal jurisdiction over the Defendant because the Defendant has its headquarters in this District and makes calls into this District.

5. The venue is proper under 28 U.S.C. § 1391(b) because the Plaintiff resides in this District and because Defendant does business in this District.

**INTRODUCTION**

6. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

11. According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in September 2023 alone, at a rate of 142.4 million per day. www.robocallindex.com (last visited October 9, 2023).

12. The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

13. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

15. Right Now Roofing Fl, Inc. operates and advertises itself as its fictious name Able Sterling Roofing.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

4

16.     Able Sterling Roofing promotes itself as roofing contractor that provides roof replacements.[3]

17.     Defendant places telemarketing solicitation calls to consumers to solicit its roofing services, as per Plaintiff's experience.

18.     Upon information and belief, Defendant uses an autodialer to place calls to consumers to solicit its roofing services, as per Plaintiff's experience.

19.     In a job posting for a Roofing Sales Representative, Defendant lists proficiency in using technology including the use of a CRM (customer relationship management) system, which is believed to include the use of an autodialer:

**Roofing Sales Representative (Base plus Commission)**
Right Now Roofing - Port Charlotte, FL
$60,000 - $100,000 a year

**Apply Now**

- Previous experience in roofing, construction, or home improvement sales is a plus.
- Excellent communication and interpersonal skills with the ability to build rapport and trust with customers.
- Self-motivated and goal-oriented with a strong desire to succeed in a competitive sales environment.
- Valid driver's license and reliable transportation.
- Ability to work evenings and weekends as needed to accommodate customer schedules.
- Proficiency in using technology such as smartphones, tablets, and CRM software for efficient communication and documentation.
- Comfortable working at heights and climbing ladders.[4]

---

[3] https://ablesterlingroofing.com/#hometop
[4] https://www.indeed.com/cmp/Right-Now-Roofing/jobs?jk=057ceea35a93a52f&start=0&clearPrefilter=1

5

20. Defendant places calls to Florida residents who registered their phone numbers on the DNC, including Plaintiff Packard but who never gave consent to the Defendant to call them.

21. In response to these calls, Plaintiff Packard brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the Florida Telephone Solicitation Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF PACKARD'S ALLEGATIONS

22. Plaintiff Packard registered her cell phone number on the National Do Not Call Registry on October 17, 2008.

23. Plaintiff Packard's cell phone number has a 941 area code, which is an area code associated with Florida.

24. On September 25, 2023 at 3:29 PM, Plaintiff Packard received an unsolicited autodialed call to her cell phone from Defendant Able Sterling Roofing, from 941-347-0317.

25. This call was not answered, but a voicemail was left by an employee named Ellen who identified the company she was calling from as Able Sterling Roofing:



26. The voicemail directs Plaintiff to call 941-347-0317 to schedule a quote for new/replacement roofing.

27. When 941-347-0317 is called, it goes to the voicemail of Ellen if the call is not answered.[5]

28. Plaintiff Packard has never done business with Defendant.

29. Plaintiff's attorneys emailed a demand for consent request to Able Sterling Roofing on September 27, 2023 at inquiries@ablesterlinggroup.com.

30. The demand for consent was received, but no response was received.

---

[5] Based on an investigation conducted by Plaintiff's attorneys.

31. The unauthorized telephonic sales call that Plaintiff received from and/or on behalf Defendant, as alleged herein, has harmed the Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

32. Seeking redress for these injuries, Plaintiff Packard, on behalf of herself and Classes of similarly situated individuals, bring suit under the FTSA.

## CLASS ALLEGATIONS

33. Plaintiff Packard brings this action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3), and seek certification of the following Classes:

> **Autodial Class:** All persons in the United States, who, on or after July 1, 2021, (1) received a telephonic sales call regarding Defendant's goods and/or services made from or into Florida, (2) using the same equipment or type of equipment utilized to call the Plaintiff.
>
> **Florida DNC Class:** All persons in Florida who, on or after August 17, 2021, (1) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, and (2) who received an unwanted telephonic sales call from or on behalf of the Defendant.

34. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current

or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Packard anticipates the need to amend the Class definition following appropriate discovery.

35. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

36. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the FTSA;

(b) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

37. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. The Plaintiff has no interests antagonistic to those

9

of the Classes, and Defendant have no defenses unique to the Plaintiff. The Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither the Plaintiff nor her counsel have any interest adverse to the Classes.

38. **Appropriateness**: This class action is also appropriate for certification because the Defendant have acted or refused to act on grounds generally applicable to the Classes and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Packard. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Violation of the Florida Telephone Solicitation Act,**
**(Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Packard and the Autodial Class)**

39.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

40.     Plaintiff brings this claim individually and on behalf of the Autodial class members against the Defendant.

41.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

42.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

43.     Defendant failed to secure prior express written consent from Plaintiff and members of the Autodial Class.

44.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Autodial Class members without Plaintiff's and the Class members' prior express written consent.

45. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

46. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

### SECOND CLAIM FOR RELIEF
### Violation of the Florida Telephone Solicitation Act,
### (Fla. Stat. § 501.059)
### (On Behalf of Plaintiff Packard and the Florida DNC Class)

41. Plaintiff repeats and realleges paragraphs 1-38 of this Complaint and incorporates them by reference herein.

42. Plaintiff brings this claim individually and on behalf of the Florida DNC Class Members against the Defendant.

43. It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone appears in the then-current quarterly listing published by the department." Fla. Stat. § 501.059(4)

44. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any

consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

45. In violation of the FTSA, Defendant made and/or cased to be made unsolicited telephone sales calls to Plaintiff, and other members of the Florida DNC Class despite their telephone numbers appearing on the quarterly listing published by the department.

46. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of damages and costs;

c)  An order declaring that Defendant's actions, as set out above, violate the FTSA;

d)  An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e)  Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Packard requests a jury trial.

**MELANEE PACKARD**, individually and on behalf of all others similarly situated,

DATED this 6th day of December, 2023.

By: /s/ Stefan Coleman
Stefan Coleman (FL Bar No. 30188)
law@stefancoleman.com
Coleman PLLC
66 West Flagler Street, Suite 900
Miami, FL 33130
Telephone: (877) 333-9427

Avi R. Kaufman (FL Bar No. 84382)*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
*Lead counsel

*Attorneys for Plaintiff and the putative Classes*